[Civ. Nos. 32529, 34291.    Second Dist., Div. Four.    Mar. 5, 1969.]

MALCOLM G. GOLDEN, Plaintiff and Appellant, v. SHEILA MARLENE GOLDEN, Defendant and Respondent.

Brown & Caplow and Sheldon R. Caplow for Plaintiff and Appellant.

Maiden & Rosenbloom, Selvin & Cohen, Hubert Maiden, Michael B. Spizer and Paul P. Selvin for Defendant and Respondent.

KINGSLEY, J.—This is an appeal by the plaintiff husband from an interlocutory decree of divorce. The interlocutory decree was entered March 24, 1967, notice of appeal was filed May 15, 1967, and an order was subsequently entered August 3, 1967, granting in part, and denying in part, plaintiff's motion to stay execution, awarding defendant wife temporary alimony and child support during pendency of the appeal and attorney fees and costs. On August 24, 1967, plaintiff appealed from that order. The appeals were consolidated. Plaintiff's brief does not discuss the August 3, 1967 order, and we deem it abandoned.[1]

Plaintiff and defendant had a marriage totaling six years and eleven months. The issue of the marriage are one six year old child and a one year old child.

Plaintiff is a 31-year-old doctor, and defendant is a 29-year-old housewife. Defendant had worked in 1959 as a teacher, earning $4,300 a year gross salary.

Each party was granted a divorce from the other on the grounds of extreme cruelty. The court granted alimony to defendant in the sum of $750 a month, to terminate in seven years or sooner if defendant dies or remarries. The plaintiff husband was ordered to pay the wife's attorney's fees, totaling $4,000, in monthly amounts of $300. Plaintiff husband was ordered to pay $500 a month for child support. The court made an elaborate division of the community assets, which it valued at $87,377.75, including an allocation of $32,500 for the good will of the husband's practice. The decree awarded that good will to the husband but required him to make to the wife certain immediate cash payments and to pay her $300 per month until she had received her one-half of the total assets (including the good will).

I

Plaintiff husband asserts that the trial court erred in finding good will of plaintiff's practice to be an asset of the

---

[1] At the request of counsel, we entered an order, prior to the filing of any briefs, extending the time to file briefs in both appeals until after the record on the appeal from the August 3rd order was filed. Thereafter both counsel filed briefs in the first appeal, although the record on the second appeal (Civ. No. 34291) was not filed until after the day of oral argument in the first appeal. We called these facts to the attention of counsel at the time of argument and they stipulated that the briefs filed in Civ. No. 32529 should be deemed filed in Civ. No. 34291 and that both appeals should be deemed submitted. Since the appellant's brief on file does not discuss the appeal from the August 3rd order, the stipulation is tantamount to an abandonment of that appeal; we so treat it.

community. In *Lyon* v. *Lyon* (1966) 246 Cal.App.2d 519 [54 Cal.Rptr. 829], the court held that, upon the dissolution of a law partnership, no allowance could be made for good will because the reputation of the firm depends on the skill of each member. In tax cases it has also been held that good will is not a deductible item in the computation of the taxpayer's net income because its tangibility and its value exist only to the extent that such tangibility and such value are connected with a going business. (*Dodge Bros.* v. *United States* (4th Cir. 1941) 118 F.2d 95, 100.)

Several cases, however, have language to the contrary. In *Brawman* v. *Brawman* (1962) 199 Cal.App.2d 876, 882 [19 Cal.Rptr. 106], a divorce case, the lower court placed no valuation on accounts receivable and good will. The appellate court stated that a professional business practice is community property. In *Mueller* v. *Mueller* (1956) 144 Cal.App.2d 245 [301 P.2d 90], the husband operated a dental laboratory business and the court found that this business did not involve the personal skill or ability of the husband. However, there is dicta in *Mueller* that states that, under the better rule, saleable good will exists in a professional practice or business founded on personal skill and reputation. Similarly, in *Fritschi* v. *Teed* (1963) 213 Cal.App.2d 718, 726 [29 Cal. Rptr. 114], the court said that, on dissolution of the community, a professional man's practice must be taken into account for evaluating the community estate for divorce purposes.

We believe the better rule is that, in a divorce case, the good will of the husband's professional practice as a sole practitioner should be taken into consideration in determining the award to the wife. Where, as in *Lyon,* the firm is being dissolved, it is understandable that a court cannot determine what, if any, of the good will of the firm will go to either partner. But, in a matrimonial matter, the practice of the sole practitioner husband will continue, with the same intangible value as it had during the marriage. Under the principles of community property law, the wife, by virtue of her position of wife, made to that value the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business.

II

Plaintiff argues that the award of alimony and child

support payments are excessive. ▮ In making an award of alimony the trial court has wide discretion. (*Hall* v. *Hall* (1954) 42 Cal.2d 435, 442 [267 P.2d 249].) There will be no reversal without a showing of an abuse of discretion. (*Rosenthal* v. *Rosenthal* (1963) 215 Cal.App.2d 140, 147-148 [30 Cal. Rptr. 49].) ▮ In 1963, plaintiff netted $41,500; in 1964 and 1965, he netted $55,500, and in 1966, he netted $35,000. Defendant wife is a 29-year-old housewife with two very young children to care for. Plaintiff has failed to show an abuse of discretion.

## III

Plaintiff argues that the court failed to take into account his financial needs, particularly the large cost of his psychiatric bills, living expenses and insurance. As the court said in *Blankenship* v. *Blankenship* (1963) 212 Cal.App.2d 736, 744 [28 Cal.Rptr. 176] : ''At the same time, the court either disbelieved the plaintiff's list of his own personal expenses or concluded that plaintiff's obligation to contribute to the support of his wife had clear priority over many of the items.'' We can find no abuse of discretion in the conclusion reached by the court below.

## IV

Plaintiff argues that the court erroneously found that he made illegal gifts. Plaintiff argues that plaintiff was not making ''gifts'' but that he paid for his psychiatric care and he prepaid business taxes, license fees for his car, Los Angeles Medical Association dues, and other business expenses. ▮ The record shows that plaintiff made certain gifts to friends and patients, running about $100 per gift, more or less. The court also found that these gifts, plus the psychiatrist's bills and prepaid business expenses, reduced the community assets in the amount of $3,647.10. The payments to Dr. Draper and Dr. Boroczi were found to be without consideration and voluntarily made because these doctors had been treating plaintiff previously without payment as a professional courtesy. We cannot say that the trial court erred in characterizing those payments as gifts.

A wife may recover one-half of the value of gifts made from community property by the husband without her consent. (*Harris* v. *Harris* (1962) 57 Cal.2d 367 [19 Cal.Rptr. 793, 369 P.2d 481].) Therefore, it appears that the personal gifts and the voluntary payments for psychiatric care may be recovered by her up to one-half.

■ However, the prepayment of business taxes, license fees, and dues appear to be legitimate business expenses and cannot be considered gifts. But that does not mean that the trial court's ultimate determination of payments was erroneous. In determining the amount of alimony, a trial court necessarily takes into account the potential income to the wife from the community property awarded to her in the same decree. We must assume that the alimony award, as made, reflected the fact that these relatively small payments were included in the computation of community property. The harm to the husband, if any, was *de minimus.*

## V

■ Plaintiff urges that his burden was increased by the court ordering him to execute a promissory note stating as follows:

"The payment of the above amount of $29,950.98 shall be evidenced by a standard form of installment note either of Title Insurance & Trust Company or Security Title Insurance Company and shall bear interest at the rate of 5% per annum and that as security for the payment of said note the husband shall assign the two Northwestern National Life Insurance Policies on the husband's life each of the face value of $10,000.00."

Section 140 of the Civil Code expressly authorizes such an order;[2] the contention is wthout merit. (*Rosenthal* v. *Rosenthal* (1961) 197 Cal.App.2d 289, 316 [17 Cal.Rptr. 186].)

## VI

■ Plaintiff alleges that the court erred in ordering plaintiff to pay the wife's accounting fees. The awarding of accountant's fees is within the discretion of the court (*Rosenthal* v. *Rosenthal* (1963) 215 Cal.App.2d 140, 148 [30 Cal. Rptr. 49].) Plaintiff has not shown an abuse of that discretion.

■ Plaintiff raises several other points, some in his opening brief, and some in his closing brief, without any legal discussion or argument, and without citation, and sometimes

---

[2] "The court may require any person required to make any payments under the provisions of this article to give reasonable security therefor and may enforce the same by the appointment of a receiver, or by any other remedy applicable to the case." (Civ. Code, § 140.)

without references to the record. These points are deemed abandoned.

In Civ. No. 32529, the judgment is affirmed; in Civ. No. 34291, the appeal is dismissed.

Jefferson, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied March 19, 1969, and appellant's petition for a hearing by the Supreme Court was denied April 30, 1969.