[No. 45274.   En Banc.   January 4, 1979.]

*In the Matter of the Marriage of* HERBERT W. FLEEGE,
*Respondent, and* ELIZABETH D. FLEEGE,
*Appellant.*

*Ralph D. Pittle*, for appellant.

*Allison & Allison, Inc., P.S.,* by *Daniel Boone Allison II,*
for respondent.

ROSELLINI, J.—On this appeal from a decree of marriage dissolution, entered April 13, 1976, error is assigned to the Superior Court's determination that the goodwill of the husband's dental practice was not an asset subject to division as a part of the community property.

The parties, who were both 58 years of age at the time of trial, had been married for approximately 32 years. They have five children, and the appellant, trained as a dietician, has not been gainfully employed during the marriage.

The respondent is a dentist, from whose practice the net profits in 1975 were $106,452.61. At the trial, the appellant presented the testimony of two certified public accountants, both of whom served clients in the medical and dental professions, who testified that the value of the respondent's practice included a goodwill factor, which had a present value. One of these set the value of the practice (evidently including accounts receivable and tangible property) at approximately $200,000. The other gave his opinion that the value of the goodwill would be equal to the gross receipts over a 2– to 3–month period. One of the experts stated that the respondent's net annual profits exceeded those of the average practitioner by approximately $50,000.

Challenging this expert testimony, the respondent produced a dentist who declared that he had never known of a dentist selling his practice and including a factor of goodwill amounting to more than a few dollars.

Despite the overwhelming evidence of the existence of an element of goodwill in the respondent's practice, the court refused to include it as an asset subject to distribution. In this the court erred.

Goodwill is property of an intangible nature and is commonly defined as the expectation of continued public patronage. *In re Marriage of Lukens,* 16 Wn. App. 481, 558 P.2d 279 (1976); *In re Marriage of Foster,* 42 Cal. App. 3d 577, 117 Cal. Rptr. 49 (1974). Among the elements which engender goodwill are continuity of name, location, reputation for honest and fair dealing, and individual talent and

ability. *In re Estate of Glant,* 57 Wn.2d 309, 356 P.2d 707 (1960).

At the time this case was decided in the Superior Court, no appellate court in this state had ruled upon the question whether goodwill can attach to a professional practice, as well as to a commercial business. Subsequently, the well–considered opinion in *In re Marriage of Lukens, supra,* was published. In that opinion, conflicting arguments which are also presented in this case were analyzed, the authorities examined, and the conclusion reached that goodwill is indeed a factor which has value to a professional person and should be included among the assets distributed upon a marriage dissolution. We approve both the reasoning and the result reached in that case.

As the Court of Appeals pointed out, while the goodwill of a professional practice may not be readily marketable and the determination of its exact value may be difficult, that element may nevertheless be found to exist in a given professional practice. The determination of its value can be reached with the aid of expert testimony and by consideration of such factors as the practitioner's age, health, past earning power, reputation in the community for judgment, skill, and knowledge, and his comparative professional success.

A dentist who has practiced many years and established a good reputation can expect his patients to return to him and to speak of him in a manner that enhances that reputation and encourages others to seek his services. Also, he can expect a large number, if not most, of these patients to accept as their dentist a person to whom he sells his practice. These prospects are a part of goodwill, and they have a real pecuniary value.

The respondent argues that the goodwill of a dental practice is not "true" goodwill, because it cannot be successfully transferred to a purchaser without certain services being performed by the practitioner. These services consist of introductions to the seller's patients and encouragement of patients to accept the buyer as their dentist. He insists

that the amount purportedly paid for "goodwill" is in fact paid for these services, and represents "future earnings" which are not subject to division as community property.

The testimony of the accountants, both of whom had large numbers of doctors and dentists among their clients, shows, however, that goodwill exists in a going practice, whether or not a sale is in the offing. Documents brought to this court by the respondent indicate that prospective purchasers are interested in the quality of the practice—not merely a dentist's willingness to introduce them to patients. They show that subsequent to the entry of the decree below, the respondent attempted to sell his practice through ads in professional periodicals. Numerous similar advertisements appeared in these journals. Each describes the thing for sale as a dental "practice." Only one or two contain an offer to stay and introduce the purchaser to the seller's patients. But assuming such services are necessary, they are not the thing sold as "goodwill," but simply the means of transferring it.

In any event, the important consideration in this marriage dissolution case is not whether the goodwill of the practice could be sold without the personal services of the respondent to effectuate its transfer, but whether it has a value to him. This fact is well brought out in *In re Marriage of Foster, supra,* where it was conceded that the goodwill of the appellant's medical practice was community property subject to distribution, the only question being whether the proper method of evaluation had been used in the lower court. There had been no testimony as to what a willing buyer would pay or a willing seller would accept for the goodwill of the practice. However, a certified public accountant, declared by the court to be a proper expert in the matter, had given his opinion of the value of the goodwill in the doctor's medical practice. In sustaining a judgment adopting that value, the California appellate court said:

> The value of community goodwill is not necessarily the specified amount of money that a willing buyer would

pay for such goodwill. In view of exigencies that are ordinarily attendant [upon] a marriage dissolution the amount obtainable in the marketplace might well be less than the true value of the goodwill. Community goodwill is a portion of the community value of the professional practice as a going concern on the date of the dissolution of the marriage. As observed in *Golden* [*v. Golden,* 270 Cal. App. 2d 401, 75 Cal. Rptr. 735 (1969)], ". . . in a matrimonial matter, the practice of the sole practitioner husband will continue, with the same intangible value as it had during the marriage. Under the principles of community property law, the wife, by virtue of her position of wife, made to that value the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business." (270 Cal.App.2d 401, 405.)

(Footnote omitted.) *In re Marriage of Foster, supra* at 584.

The respondent's ads in professional journals proclaimed that his practice grossed over $225,000 per year, a fact which would have been of no interest to a prospective buyer if all that was being purchased was the respondent's equipment and accounts receivable (the only aspects of the practice to which the trial court attributed value). This and other advertisements appearing in the journals constitute convincing evidence that there is a market for the sale of dental practices, and that such practices include more than equipment and accounts receivable.

The respondent sold his practice to his son within a year after the decree was entered, thus relieving himself of the obligation to make support payments under the decree. The purchase price was $80,000, which was approximately $32,000 more than the value of the equipment and accounts receivable which was found by the trial court. Furthermore, the accounts receivable had been reduced by $5,000 at the time of the sale. While the respondent avers and the contract of sale recited that none of this $37,000 was attributable to goodwill, he offers no other explanation for it. Not only does the selling price reflect an amount paid for the

intangible value of goodwill, but it can be assumed that a father, selling to his son, would be less inclined to demand the full value than he would be if he were selling to a stranger.

While there have been a number of courts which have refused to assign a value to the goodwill of a professional practice in a divorce proceeding, the modern tendency is to acknowledge the economic facts and take such goodwill into account. *See* Annot., *Accountability for Good Will of Professional Practice in Actions Arising from Divorce or Separation,* 52 A.L.R.3d 1344 (1973). 38 Am. Jur. 2d *Good Will* § 8 (1968); 38 C.J.S. *Good Will* § 3 (1943) and § 3 n.41 (Supp. 1978). California, a jurisdiction whose liberal approach with respect to community property we adopted in *Wilder v. Wilder,* 85 Wn.2d 364, 534 P.2d 1355 (1975),[1] is firmly committed to this view. That the goodwill of a profession is a salable asset has long been recognized in Oregon. *See Thompson Optical Inst. v. Thompson,* 237 P. 965 (Ore. 1925), wherein many cases involving the sale of medical practices are cited. The New Mexico Supreme Court has recently said that the better rule is that goodwill exists in a professional practice and is salable. *Durio v. Johnson,* 68 N.M. 82, 358 P.2d 703 (1961).

Another persuasive case is *Rees v. United States,* 187 F. Supp. 924 (D. Ore. 1960), *aff'd,* 295 F.2d 817 (9th Cir. 1961). That was an action for the refund of certain income taxes. The taxpayer, an orthodontist, had entered into a partnership with other dentists, who had paid him $35,000 for the interest which they thereby acquired in the goodwill of his previous practice. It was argued that since the dentist's professional skill and reputation were taken into account in arriving at the purchase price, the entire amount could not be classed as a capital asset. This proposition was rejected, the court remarking that such factors were of the

---

[1] We held there that a retirement pension, although it had not vested at the time of a marriage dissolution, should be taken into consideration in making the community property distribution.

kind that any practical businessman would have considered in determining what he would pay for the goodwill of a business or profession.

The value of goodwill to the professional spouse, enabling him to continue to enjoy the patronage engendered by that goodwill, constitutes a community asset and should be considered by the court in distributing the community property. That value is real, and the mere fact that it cannot be precisely determined should not deter the court from assigning it a reasonable value within the evidence. Just as in other areas of the law where precise proof cannot be made, such difficulty does not constitute an insurmountable obstacle. Where, as was the case here at the time of trial, a professional man is approaching retirement age, the salable value of his practice should also be approximately determinable and is a factor to be taken into account.

The cause is remanded to the Superior Court with directions to determine the value of the goodwill of the respondent's practice, as it existed at the date of dissolution, taking into account the testimony of the experts and the other factors which we have mentioned. The court may call for additional evidence if that is deemed desirable. The property distribution should be revised accordingly.

WRIGHT, C.J., and HAMILTON, UTTER, and HICKS, JJ., concur.

STAFFORD, J.—I dissent. In the instant case the majority has oversimplified important facts on the subject of goodwill. For example, it has down–played the fact that the goodwill in question is not similar to commercial goodwill in general. It is connected with a dental practice which is covered by specific laws governing the use of one's name. Also, the role of the sole dental practitioner is all but ignored.

Further, the majority has chosen to place its reliance upon the testimony of two experts obviously rejected by the trial court and has rejected the testimony of a third expert

which the trial court clearly accepted on the subject of goodwill. The majority preferred and used the expert testimony with which it chose to agree rather than that which was accepted by the trial court. This is not a proper appellate function when there is conflicting testimony, the trial court has seen and heard the experts and clearly has given greater weight to the one it felt had the most credibility, and where there is substantial evidence to support the trial court's finding. Under these circumstances the constitution does not authorize an appellate court to substitute its judgment for that of the trial court. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). In this case the trial court chose to believe an expert who was a dentist with over 40 years of practice in this state, who had himself sold his sole dental practice, who had assisted attorneys and widows of dentists to liquidate dental practices and who had assisted young dentists to acquire existing practices.

Usually it is not necessary to restate the facts, but in this case I must do it so the issue of goodwill actually involved herein may be viewed in its correct setting.

The Fleeges were married in 1943. During the marriage Dr. Fleege established a substantial dental practice. In 1975 he netted approximately $106,000 *as a sole practitioner* specializing in children's dentistry.

In 1976, Dr. Fleege filed for a dissolution of the marriage. At trial the only dispute was concerned with whether the goodwill of Dr. Fleege's dental practice was an asset subject to division. Three experts testified on the issue. Each based his opinion upon experience with sales of dental practices in which the selling dentist retired following a short–term association with the purchasing dentist. One expert, a dentist, testified that any goodwill associated with such sales had only minimal value and is paid to the retiring dentist to maintain *that* dentist's goodwill. The other two experts, certified public accountants, placed widely disparate values upon the goodwill of Dr. Fleege's practice. All experts agreed, however, that if a dentist should fail to dispose of

his practice prior to death any goodwill simply "evaporated" and would have no value as an asset.

The trial court valued the fixed assets of the practice at $47,373 and awarded them to Dr. Fleege. It assigned no value to goodwill and deemed it an asset incapable of division upon dissolution. After the decree of dissolution was entered Dr. Fleege sold his practice to his son and received nothing for goodwill.

Mrs. Fleege appealed the property division claiming that goodwill is a valuable asset which should have been considered in the division of property. It should be noted that after the notice of appeal was filed herein, Division Two of the Court of Appeals held that professional goodwill is an asset to be considered in a division of property. *In re Marriage of Lukens*, 16 Wn. App. 481, 558 P.2d 279 (1976). Division One of the Court of Appeals certified the instant appeal to this court.

The issue before this court is whether the goodwill of a *sole professional practitioner* of dentistry is a valuable asset subject to division in a dissolution of marriage. Initially, however, it is necessary to consider the general nature of goodwill.

Goodwill is most frequently associated with ongoing *commercial* ventures. *In re Estate of Glant*, 57 Wn.2d 309, 356 P.2d 707 (1960); *J.L. Cooper & Co. v. Anchor Secs. Co.*, 9 Wn.2d 45, 113 P.2d 845 (1941); *Stanton v. Zercher*, 101 Wash. 383, 172 P. 559 (1918). In the commercial setting, goodwill includes the name, location, reputation for honesty and fair dealing, individual talents and abilities of the members of the organization. *In re Estate of Glant, supra* at 312; *J.L. Cooper & Co. v. Anchor Secs. Co., supra* at 54; *Stanton v. Zercher, supra* at 391-92. Goodwill comprises those advantages which may inure to a purchaser from holding himself out to the public as the successor in an enterprise which had been conducted in the past with the name and repute of his predecessor. *Stanton v. Zercher, supra* at 391. Because of its very nature the goodwill of an ongoing commercial venture *inheres in the business* and is

inseparable from the whole. *In re Estate of Glant, supra* at 312; *Stanton v. Zercher, supra* at 392; *In re Marriage of Lukens, supra* at 483–84.

Goodwill may also be generated in a *professional* venture such as the practice of dentistry, law, or medicine. But, such goodwill is *personal* in nature and is not a readily marketable commodity. *See Lockhart v. Lockhart,* 145 Wash. 210, 259 P. 385 (1927); *In re Marriage of Lopez,* 38 Cal. App. 3d 93, 113 Cal. Rptr. 58 (1974); *Golden v. Golden,* 270 Cal. App. 2d 401, 75 Cal. Rptr. 735 (1969). Factors contributing to a professional practitioner's goodwill include his name, age, health, past earning power, reputation for skill, judgment, and knowledge as well as his comparative success. *In re Marriage of Lukens, supra* at 484; *In re Marriage of Lopez, supra* at 68. The individual labor and individual attention of the professional practitioner are critical to establishing and maintaining goodwill. *Lockhart v. Lockhart, supra* at 213; *Nail v. Nail,* 486 S.W.2d 761, 763 (Tex. 1972).

Goodwill, whether generated by a commercial business or by a professional venture, is clearly "property" in a legal sense. *See J.L. Cooper & Co. v. Anchor Secs. Co., supra* at 53. However, to be true goodwill in the sense of a commodity with a salable value, it must have an existence *separate from* the continued presence of those who generated it. Goodwill of this nature may be sold precisely as other personal property may be sold. *See J.L. Cooper & Co. v. Anchor Secs. Co., supra* at 53. It follows that if goodwill of a professional practice exists, it will be an asset subject to division on dissolution of marriage if an appropriate value may be assigned to it as a salable commodity.

The next question is whether any goodwill exists, in connection with Dr. Fleege's *sole* practice of dentistry, which may be valued in this dissolution proceeding.

Each expert testified that the "goodwill" associated with Dr. Fleege's *sole* practice of dentistry would have a value *only if* he had associated with a dental successor for a period of time and then retired. Thus, according to the only

testimony on the subject, both the *existence* and *value* of that kind of "goodwill" are dependent upon a short–term association followed by Dr. Fleege's retirement. The trial court properly rejected this evidence and refused to distribute this so–called "goodwill" of Dr. Fleege's sole dental practice.

Clearly, the value assigned by the experts to Dr. Fleege's so–called "goodwill" represents a value assigned to a service for which a successor would be willing to pay Dr. Fleege for a temporary association prior to retirement. This concept and its value is not goodwill as the term is commonly used. Rather, it represents compensation to Dr. Fleege in exchange for a short–term association (*i.e.*, his continued presence) followed by retirement. True goodwill must not depend upon the continued presence of the one who originally created it. It derives from the ability of a successor to enjoy the predecessor's *name* and *reputation*.

Further, considering the type of "goodwill" and allied valuation testified to by the experts herein it is important to note that in the profession of dentistry a successor could not lawfully enjoy Dr. Fleege's name and reputation *without his continued* active professional *association*. RCW 18.32.360 provides:

> It shall be unlawful for any person to practice dentistry under any name, except his own, which shall be that used in his license issued by the director: *Provided,* That this shall not apply to any person who was practicing dentistry in this state on March 20, 1935, under an association or trade name.
>
> It shall be unlawful for any person to conduct a dental office in his name, or to advertise his name in connection with any dental offices, unless he is personally present therein operating as a dentist, or personally overseeing the operations performed in any office, during most of the time that that office is being operated: *Provided,* That this section shall not prohibit any person from continuing to conduct any offices legally conducted in this state on March 20, 1935.
>
> Any violation of the provisions of this section shall constitute improper, unprofessional and dishonorable

conduct; it shall also constitute grounds for injunction proceedings as provided by this chapter, and in addition shall constitute a gross misdemeanor.

Consequently, neither the existence nor the value of "goodwill" discussed by the experts represents goodwill in its true sense. The trial court properly refused to consider such evidence as establishing either the existence of or the value of the goodwill of Dr. Fleege's sole dental practice.

I am also unable to find any evidence demonstrating the existence or value of the kind of "goodwill" here in question. The deficiency is understandable, however. Given the accepted understanding of goodwill, the nature of the dental profession, and RCW 18.32.360, the *existence* and *value* of a sole dental practitioner's goodwill, at the time of marriage dissolution, would be the same as its value if he should simply *abandon* it without more. *Lockhart v. Lockhart, supra* at 213. Total *abandonment* of a sole dental practice, while unusual, is analogous to the situation in which a dentist dies prior to selling the practice. In such an event, the three experts agreed any goodwill would simply "evaporate." It would no longer exist and would have no value.

If Dr. Fleege were to die or abandon his practice, any person thereafter using his name would be guilty of a gross misdemeanor. Since the very *existence* of professional goodwill derives from a successor's ability to enjoy the reputation associated with his predecessor and because another dentist could *not* enjoy Dr. Fleege's reputation without his continued presence, *no true goodwill exists* in connection with Dr. Fleege's sole practice to be valued in the marriage dissolution setting. Consequently, the trial court properly determined that the professional "goodwill" of Dr. Fleege's sole dental practice was not an asset capable of division in a marriage dissolution proceeding.

In resolving the issue at hand this court is not concerned with possible goodwill as an asset incident to sale of other types of professional practices, or goodwill that may exist in the setting of a professional partnership. We are concerned

solely with a marital dissolution and the existence and valuation of goodwill generated by a dentist who is a sole practitioner.

The trial court should be affirmed.

BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur with STAFFORD, J.