FILED
COURT OF APPEALS
DIVISION II

2015 JUN -4 AM 8: 36

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of: | No. 45674-5-II |
| ALIZA WISEMAN (f/n/a Tristan Benz), | |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| TIMOTHY JAMES BENZ, | |
| Appellant. | |

BJORGEN, A.C.J. — Timothy Benz appeals the order of child support, decree of dissolution, and findings of fact and conclusions of law entered after the trial on Aliza Wiseman's petition to dissolve her marriage to Benz. Benz contends that (1) the trial court unjustly or inequitably divided the parties' community and separate property in the decree of dissolution, (2) the trial court made several errors related to the order of child support, and (3) numerous irregularities occurred in the dissolution proceedings. We hold that (1) Benz fails to show an unjust or inequitable division of the couple's property, (2) Benz waived his major claim of error related to the order on child support by stipulating to it in open court, and (3) any other

error or irregularity in the dissolution proceedings is either unsupported by the record or harmless. We affirm.

## FACTS

Benz and Wiseman's marriage began in 1995. It ended in 2011 when Wiseman petitioned for its dissolution and moved to California with the couple's three children.

Both Wiseman and Benz represented themselves at the trial on Wiseman's petition. After Wiseman rested her case, Benz, who had reserved his opening statement, indicated a desire to make one, but the trial court moved immediately into the presentation of his evidence. Benz then introduced some evidence of his own before resting his case.

The evidence the trial court admitted gave it some measure of the parties' income, assets, and liabilities. Benz worked as a real estate broker earning approximately $2,500 per month. Wiseman worked as a personal assistant earning "roughly under [$2,000] a month doing social media" work. Verbatim Report of Proceedings (VRP) (Oct. 1, 2013) at 58. Wiseman had also received substantial sums of money for a loss of consortium claim from the death of her father, but she testified at trial that she had spent that money on the upkeep of her children and business endeavors.

The parties had significant assets. The evidence showed that the loss of consortium payments Wiseman received had funded two annuities, one in her name and one in Benz's, each valued at $30,000. In addition, Wiseman had nearly $82,000 that she had taken from a community account just before she separated from Benz. She claimed at trial that the money came from the loss of consortium claim for her father's death and was her separate property. Benz had retirement accounts, "probably" existing before his marriage, worth approximately $20,000, VRP (Oct. 1, 2013) at 104-06, and an annuity account in South Africa worth roughly

$100,000. Finally, an individual named Mike Sumsky had executed a promissory note worth $70,000 plus interest to Benz and Wiseman.

The couple owned a home in Port Orchard, although Benz stated that the home was in foreclosure and there was no possibility of curing the default on the mortgage. Benz and Wiseman also owned an interest in a timeshare, although Benz again claimed that interest had no value.

The parties had resolved some, but not all, of the issues created by the dissolution before trial. Benz and Wiseman had agreed to a parenting plan, which they had filed with the superior court before the dissolution trial. Benz and Wiseman had also agreed to a child support payment schedule requiring Benz to pay $750 per month, or $250 for each of the three children. The parties stipulated to the existence of this agreement in open court and testified that it was in the best interests of their children. Benz and Wiseman further stipulated in open court that Benz owed three months of overdue child support payments. Finally, proceedings before the Department of Social and Health Services had produced an agreed settlement/consent order governing medical insurance and expenses.

Benz and Wiseman, however, could not agree to a division of their assets and liabilities. Benz contended that the parties had an agreement, but Wiseman denied that any agreement existed. Benz could offer no written proof of the agreement.

At the end of the dissolution proceeding, the trial court awarded each party the annuity that named them as a beneficiary, their personal property, the money in their post-separation accounts, and half of the Sumsky promissory note. Benz was awarded approximately three quarters of his retirement account, or around $15,000; the South African annuity; and the couple's interests in real property. Wiseman was awarded the $81,000 that she had withdrawn

from the money market account as her separate property and approximately one-quarter of Benz's retirement account, around $5,000. The trial court adopted the parenting plan Benz and Wiseman had agreed to, the stipulated order of child support, and the stipulated agreement that Benz owed three months of overdue child support. It also left in place the agreed settlement/consent order governing medical insurance and expenses.

Benz now appeals the order of child support, the decree of dissolution, and the findings of fact and conclusions of law, incorporating the parenting plan, entered after the dissolution trial.

## ANALYSIS

### I. PROPERTY DIVISION

Benz first contends that the trial court erred in its division of the parties' property, appearing to make five arguments in this regard. First, Benz contends that the property division was unjust and inequitable, because the trial court awarded Wiseman the funds she withdrew from the community account as her separate property without a commensurate offset to him. The offset Benz requests is an undivided interest in the Sumsky promissory note. Second, Benz claims that the property division was unjust and inequitable because it left him with insufficient assets to pay the order of child support. Third, Benz contends that the trial court erred by failing to properly account for his and Wiseman's income when distributing the parties' property. Fourth, he contends that the trial court erred by failing to give effect to his and Wiseman's pretrial agreement to divide their property. Fifth, Benz contends that the trial court initially erred in dividing some of the couples' property. We are not persuaded by these contentions and affirm the trial court's division of the property.

4

RCW 26.09.080 governs the disposition of property and liabilities in dissolution proceedings. The provision requires the trial court to divide all the parties' property, community or separate, in a manner "just and equitable" in light of all relevant factors. RCW 26.09.080. Those factors include, at a minimum, the nature and extent of the parties' community and separate property, the length of the marriage or domestic partnership, and the economic circumstances of each spouse or domestic partner at the effective date of the division of the property. RCW 26.09.080(1)-(4).

We review the trial court's division of property in dissolution proceedings for an abuse of discretion. *In re Marriage of Urbana*, 147 Wn. App. 1, 9, 195 P.3d 959 (2008). The trial court abuses its discretion where its ruling is manifestly unreasonable or it exercises its discretion on untenable grounds or untenable reasons. *Urbana*, 147 Wn. App. at 9-10.

We review the trial court's classification of property as separate or community as a mixed question of fact and law. *In re Marriage of Martin*, 32 Wn. App. 92, 94-95, 645 P.2d 1148 (1982). Property is characterized as community or separate at the point of acquisition. *In re Marriage of Skarbek*, 100 Wn. App. 444, 447, 997 P.2d 447 (2000). Damages a spouse receives in compensation for a personal injury are acquired as separate property. *In re Marriage of Brown*, 100 Wn.2d 729, 737-38, 675 P.2d 1207 (1984).

Depositing funds into an account does not constitute an acquisition of property. *Skarbek*, 100 Wn. App. at 446. Consequently, separate property deposited into a community account retains its separate character unless commingled such that it cannot be distinguished from the community funds in the account. *Skarbek*, 100 Wn. App. at 448. The party claiming that certain commingled funds are separate property must "clearly and convincingly trace them to a separate source." *Skarbek*, 100 Wn. App. at 448. Evidence satisfies the clear and convincing test when

"'sufficient to convince the fact finder that the fact in issue is highly probable.'" *Dillon v. Seattle Deposition Reporters, LLC*, 179 Wn. App. 41, 86, 316 P.3d 1119 (quoting *Tiger Oil Corp. v. Yakima County*, 158 Wn. App. 553, 562, 242 P.3d 936 (2010)), *review granted*, 180 Wn.2d 1009 (2014).

Benz contends that the trial court erred in finding that Wiseman had shown by clear and convincing evidence that the funds she withdrew from the money market account were her separate property. However, even if Benz were correct, he has not shown that the assumed incorrect characterization of the withdrawn funds resulted in an unjust and inequitable division of property.

First, any mischaracterization of property is harmless unless it "significantly influence[s]" the trial court's division and we cannot tell on review that a proper characterization would not have affected the trial court's division of property. *In re Marriage of Shannon*, 55 Wn. App. 137, 142, 777 P.2d 8 (1989). Here, nothing suggests that the trial court based its division of Benz and Wiseman's property on its characterization of the money she withdrew. Under *Shannon*, any error in characterizing the property is therefore harmless. 55 Wn. App. at 142.

Second, as already noted, the trial court's duty in dividing the assets in a dissolution is to reach a just and equitable distribution in light of all relevant factors. RCW 26.09.080. A review of the trial court's division of the property shows that it did so here. Benz and Wiseman each received one of the $30,000 annuities and half of the community's interest in the $70,000 promissory note. Each also received their post-separation property and the community property they possessed after Wiseman moved out and took some of their things with her. Benz received $115,000 of his separate property, $15,000 from his retirement account and $100,000 from the

South African annuity, along with the parties' interests in real estate, which admittedly might have negative value. Wiseman received the $82,000 she withdrew from a community account as her separate property and $5,000 from Benz's retirement account. The parties received a roughly equal share of the total of their separate and community property, making the division just and equitable given the parties' relatively equal earnings. The court did not abuse its discretion in making this division.

Benz next contends that the trial court divided the parties' property in an unjust and inequitable manner because the division left him unable to pay the order of child support. The record does not support this claim. The trial court awarded him substantial assets. Nothing shows that Benz cannot pay his child support obligations or that any such inability, if it exists, resulted from the trial court's order.

Benz also claims that the trial court failed to properly consider Wiseman's income when dividing his and Wiseman's property. Again, the record does not support this claim. Benz had greater income than Wiseman, and while Wiseman did receive money from an unrelated loss of consortium claim, she testified that money was gone by the time of the dissolution trial.

Benz further argues that the trial court erred by refusing to give effect to his and Wiseman's pretrial agreement on the division of their assets. Civil Rule (CR) 2A, however, forbids the superior courts from recognizing a purported agreement once it is disputed, unless the party attempting to enforce the agreement can provide written proof of the agreement or the

7

counter party acknowledges the agreement in open court.[1] Benz could produce no document signed by Wiseman stipulating to any division of property, and she denied the existence of any agreement in open court. Under CR 2A, the trial court could not enforce the alleged agreement to divide Benz and Wiseman's property.

Finally, Benz maintains that the trial court's original division of the parties' property suffered from irregularities, namely that the trial court awarded one asset twice, awarded one asset that did not exist to Benz, and failed to award two significant assets. We decline to address the merits of this claim as it is moot. *See State v. Deskins*, 180 Wn.2d 68, 80, 322 P.3d 780 (2014). Even if Benz is correct about the trial court's original division, the parties sought clarification from the trial court and it provided for the proper division of these assets. We may not provide him any effective relief given that correction.

The trial court's division of property was just and equitable and was not an abuse of discretion.

## II. CHILD SUPPORT

Benz also appeals the order of child support, contending that the trial court awarded child support payments to Wiseman that are neither in accordance with the Washington State Child Support Schedule Worksheet nor commensurate with Benz's income. Benz also contends that the trial court erred by ordering that he pay overdue child support payments as a monetary judgment and by allowing Wiseman to submit a "manipulated" worksheet. Appellant's Br. at 5.

---

[1] CR 2A provides that

> [n]o agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

Because the parties stipulated in open court that Benz could and should pay $750 a month in child support in the best interests of the children and that he owed three months of overdue child support, Benz waived any claims of error or rendered any error harmless. We affirm the order.

RCW 26.09.100(1) requires the trial court to order "either or both parents owing a duty of support to any child of the marriage or the domestic partnership" to pay child support as calculated using chapter 26.19 RCW for dependent children upon dissolution of a marriage. RCW 26.19.020 sets the support schedule for a child based on the combined monthly net income of the child's parents, the child's age, and the number of siblings the child has. RCW 26.19.035(1)(c) generally requires the use of the child support schedule when ordering child support under RCW 26.09.100, although RCW 26.19.075 allows the trial court to deviate from the standard calculation. We review a trial court's order of child support for an abuse of discretion. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990).

Benz first argues that the trial court erred by ordering $750 a month in child support and accepting a "manipulated" child support worksheet. Appellant's Br. at 5. Benz, however, agreed in open court that he would pay $750 a month in child support.[2] By doing so, he waived any claim that the trial court erred in ordering him to make those payments. *In re Marriage of Kaplan*, 23 Wn. App. 503, 505, 597 P.2d 439 (1979).

Benz also claims that the ordered support is financially unsustainable and that his agreement to the order was contingent upon the division of property he agreed to with Wiseman. We reject these claims because nothing in the record supports them.

---

[2] The parties' agreement alone is insufficient to justify a deviation from the scheduled payments. RCW 26.19.075(5). However, the record contains testimony from both Benz and Wiseman that a deviation, which increased Benz's payments, was in the best interests of the children. The presence of that testimony indicates that the trial court did not order the deviation solely on the basis of the parties' agreement, but also on the best interests of the children.

Finally, Benz contends that the trial court erred by ordering a monetary judgment against him for overdue child support and by coaching Wiseman to seek such a judgment. We find Benz's arguments unpersuasive. First, the trial court did not err when it did so; child support payments become a judgment when due. *In re Marriage of Kahle*, 134 Wn. App. 155, 160-61, 138 P.3d 1129 (2006); *In re Marriage of Watkins*, 42 Wn. App. 371, 374, 710 P.2d 819 (1985) ("'[C]hild support payments become vested judgments as the installments come due.'") (quoting *Schafer v. Schafer*, 95 Wn.2d 78, 80, 621 P.2d 721 (1980)). Second, the record shows that the trial court did not coach Wiseman; it instructed her, a pro se litigant, on how to properly prepare the decree of dissolution it would issue as its order. The trial court's order of child support was well supported and was not an abuse of discretion.

## III. TRIAL IRREGULARITIES

Benz next argues that a number of irregularities tainted the dissolution trial. Specifically, he contends that the trial court (1) was incompetent, (2) denied him his right to an opening statement, (3) gave disparate time to Wiseman to present her case, and (4) rushed to judgment, failing to consider the exhibits and evidence offered by the parties. Benz's claims are without merit.

Benz first contends that it was error to allow Judge Dixon to preside over his trial because Judge Dixon lacked experience in family law and failed to grasp the subject matter of the dissolution proceedings. To the contrary, no evidence supports Benz's contentions, and the record shows that Judge Dixon did his best to work through a dissolution proceeding made complicated by the fact that both litigants represented themselves.

Benz also contends that the trial court erred by refusing to allow him to make an opening statement. Benz initially reserved his opening statement, and the trial court told him to ask to

10

make an opening statement at the beginning of his case-in-chief. Benz appears to have made such a request, but the trial court moved directly into the presentation of Benz's case. Nevertheless, Benz does not show that the error affected or presumptively affected the outcome of the trial, and the trial court allowed him to present evidence and argue his case during closing. We hold that any error was harmless. *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983) (no reversal for error without prejudice).

Benz next contends that the trial court gave Wiseman significantly longer time to present her case than it gave him. While true, that disparity occurred because Benz rested after presenting a shorter case. The trial court in no way denied Benz equal time, and no error occurred.

Finally, Benz contends that the trial court rushed to judgment and failed to consider the evidence presented by the parties. No evidence shows a rush to judgment. Instead, the record shows that the trial court attempted, as best it could, to consider the evidence presented by the parties in a somewhat chaotic manner. We find no error.

## IV. ATTORNEY FEES

Benz does not request attorney fees. Wiseman requests reasonable attorney fees for her work in responding to Benz's appeal. Pro se litigants who are not attorneys may not receive an award of attorney fees on appeal. *In re Marriage of Brown*, 159 Wn. App. 931, 938-39, 247 P.3d 466 (2011). Therefore, we deny Wiseman's request for attorney fees on appeal.

## CONCLUSION

We affirm the trial court's child support order, decree of dissolution, and findings of fact

No. 45674-5-II

and conclusions of law.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, A.C.J.

We concur:

Lee, J.

Sutton, J.

12